rived no benefit or advantage, as consideration for signing the same, but that they were merely accommodation sureties. Lottier & Wade were the principals in one bond, Robert Walter was the principal in the other.

It is conceded that if any assets should be realized from the separate estates of the sureties, those assets should be applied to the payment of this debt in preference to the individual creditors of the respective bankrupts; so, also, it is conceded that if a surplus of the partnership assets should remain after the payment of the partnership debts, such surplus should be so applied. The principle of law applicable to this case, in my opinion, is, that partnership assets must be first applied to the debts of the partnership; and that as this debt is not a debt of the partnership, but simply a debt of the individual partners, the claim of the United States must be postponed until all the debts of the partnership shall be paid from the assets of the partnership. This principle of law is sustained by the decisions of all courts everywhere, and it is fully recognized by the thirty-sixth section of the bankrupt law [of 1867 (14 Stat. 534)], which provides, inter alia, as follows: "And after deducting out of the whole amount received by such assignee, the whole of the expenses and disbursements, the net proceeds of the joint stock shall be appropriated to pay the creditors of the co-partnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors." The partnership property is a fund appropriated by law to the payment of the partnership debts, and, as the liability of the several partners on the bonds now under consideration is binding upon them as individuals, and not on them as partners in a firm, I am clearly of the opinion that the claim asserted by the collector to priority in the distribution cannot be sustained.

LEAVITT, District Judge. The opinion of the register on the question stated by him is affirmed, and the assignee of the bankrupts is directed to allow and adjust the claims against the sureties in the bonds described in favor of the United States, on the basis that the claims against said sureties are against them in their individual capacities, and not as members of said firm.

## Case No. 17,314.
### In re WEBB et al.
[3 N. B. R. 720 (Quarto, 177);[1] 2 Chi. Leg. News, 313.]

District Court, S. D. New York. May 10, 1870.

BANKRUPTCY—DISCHARGE.

To entitle a bankrupt to discharge, the proceeds of his property to be divided among his

[1] [Reprinted from 3 N. B. R. 720 (Quarto, 177), by permission.]

creditors must be equal to fifty per cent. at the time of the hearing of the application for the discharge before the register.
[Cited in Re Kahley, Case No. 7,594; Re Van Riper, Id. 16,874; Re Vinton, Id. 16,951; Re Waggoner, 5 Fed. 917.]

Application of the bankrupts [Charles C. Webb and Thomas H. Taylor] for final discharge.

BLATCHFORD, District Judge. The proceeds of the bankrupts' property in the hands of their assignee, subject to be divided among their creditors, must, at the time of the hearing of the application for their discharge before the register, be then equal to fifty per centum of the amount of the claims proved against their estate, on which they are liable as principal debtors, in order to entitle them to discharge, unless the assent named in section 33 [of the act of 1867 (14 Stat. 533)] is filed. I concur with the view taken in Re Freiderick [Case No. 5,092].

## Case No. 17,315.
### In re WEBB et al.
[6 N. B. R. 302.][1]

District Court, D. Kentucky. 1872.

BANKRUPTCY — ASSIGNEE'S LIABILITY FOR RENT.

A landlord's right to rent, against the bankrupt's estate, expires on the day of adjudication. If the assignee occupy the premises after that day, he, and not the estate, is liable for the rent; when, however, his occupancy is for the benefit of the estate, he will be credited by the rent he is obliged to pay.
[Cited in Bailey v. Loeb, Case No. 739; Re Hufnagel, Id. 6,837.]
[Cited in Deane v. Caldwell. 127 Mass. 244; Abbott v. Stearns, 139 Mass. 170, 29 N. E. 379.]

The bankrupt held a lease from Gustavus Schurman's estate, now in the hands of Robert Cochran, as receiver, by order of the Louisville chancery court, at an annual rental of two thousand seven hundred dollars, which lease expires on the first day of July, eighteen hundred and seventy-two. J. C. Webb & Co. were forced into bankruptcy on the ninth day of October, eighteen hundred and seventy-one, and the assignee took possession of the leased premises, and held the same up to January thirteenth, eighteen hundred and seventy-two, for the purpose of selling off the stock on hand, at which time the assignee paid all rent to January thirteenth, eighteen hundred and seventy-two, and offered to surrender the premises to the landlord, which surrender the landlord accepted, with the express understanding that he claimed the rent for the full term of the lease up to July first, eighteen hundred and seventy-two. The landlord afterwards rented the premises to another tenant at four hundred and fifty-two dollars and fifty cents less than J. C. Webb & Co. had agreed to pay to July first, eighteen hundred and seventy-two. The

[1] [Reprinted by permission.]